UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
 CRUSHAUN HUNDLEY,

                            Plaintiff,

        -against-

CORRECTION OFFICER A. FRUNZI,
CORRECTION OFFICER C. MAY,
CORRECTION OFFICER R. SNYDER,
CORRECTION OFFICER B. O'ROURKE,
SERGEANT T. MALLARE,
CAPTAIN CARROLL,
CORRECTION NURSE LESLEY
POTTINGER and CORRECTION
OFFICERS JOHN DOE ##1-20,

                            Defendants.
----------------------------------------------------------------------X

**AMENDED COMPLAINT**

Plaintiff Demands
A Trial By Jury

20-cv-6150

Plaintiff, by his attorneys Sivin, Miller & Roche, LLP, complaining of defendants, alleges as follows, upon information and belief:

## THE PARTIES AND JURISDICTION

1. That at all times herein mentioned, plaintiff was and is a citizen of the State of New York.

2. That at all times herein mentioned, plaintiff was a prisoner under the care, custody, and control of the New York Department of Corrections and Community Supervision (DOCCS), which was and is an agency of the State of New York.

3. That as of the time of the filing of this complaint, plaintiff is not a prisoner as defined by 42 U.S.C. § 1997e(h).

4. That at all times herein mentioned, defendant Correction Officer A. Frunzi (hereinafter "Frunzi"), whose first name is unknown to plaintiff, was and is a citizen of the State of New York.

5. That at all times herein mentioned, Frunzi was and is employed as a DOCCS correction officer at Elmira Correctional Facility (hereinafter "Elmira"), which is located within the Western District of New York.

6. That at all times herein mentioned, Frunzi was acting under color of state law.

7. That at all times herein mentioned, Frunzi was acting within the course and scope of his employment as a DOCCS correction officer.

8. That at all times herein mentioned, defendant Correction Officer C. May (hereinafter "May"), whose first name is unknown to plaintiff, was and is a citizen of the State of New York.

9. That at all times herein mentioned, May was and is employed as a DOCCS correction officer at Elmira.

10. That at all times herein mentioned, May was acting under color of state law.

11. That at all times herein mentioned, May was acting within the course and scope of his employment as a DOCCS correction officer.

12. That at all times herein mentioned, defendant Correction Officer R. Snyder (hereinafter "Snyder"), whose first name is unknown to plaintiff, was and is a citizen of the State of New York.

13. That at all times herein mentioned, Snyder was and is employed as a DOCCS correction officer.

14. That at all times herein mentioned, Snyder was acting under color of state law.

15. That at all times herein mentioned, Snyder was acting within the course and scope of his employment as a DOCCS correction officer.

16. That at all times herein mentioned, defendant Correction Officer B. O'Rourke (hereinafter "O'Rourke"), whose first name is unknown to plaintiff, was and is a citizen of the State of New York.

17. That at all times herein mentioned, O'Rourke was and is employed as a DOCCS correction officer.

18. That at all times herein mentioned, O'Rourke was acting under color of state law.

19. That at all times herein mentioned, O'Rourke was acting within the course and scope of his employment as a DOCCS correction officer.

20. That at all times herein mentioned, defendant Sergeant T. Mallare (hereinafter "Mallare"), whose first name is unknown to plaintiff, was and is a citizen of the State of New York.

21. That at all times herein mentioned, Mallare was and is employed as a DOCCS sergeant.

22. That at all times herein mentioned, Mallare was acting under color of state law.

23. That at all times herein mentioned, Mallare was acting within the course and scope of his employment as a DOCCS sergeant.

24. That at all times herein mentioned, defendant Captain Carroll (hereinafter "Carroll"), whose first name is unknown to plaintiff, was and is a citizen of the State of New York.

25. That at all times herein mentioned, Carroll was and is employed as a DOCCS captain.

26. That at all times herein mentioned, Carroll was acting under color of state law.

27. That at all times herein mentioned, Carroll was acting within the course and scope of his employment as a DOCCS captain.

28. That at all times herein mentioned, defendant Correction Nurse Lesley Pottinger (hereinafter "Nurse Pottinger"), was and is a citizen of the State of New York.

29. That at all times herein mentioned, Nurse Pottinger was and is employed as a DOCCS nurse at Elmira.

30. That at all times herein mentioned, Nurse Pottinger was acting under color of state law.

31. That at all times herein mentioned, Nurse Pottinger was acting within the course and scope of her employment as a DOCCS nurse.

32. That at all times herein mentioned, defendant Correction Officers John Doe ##1-20 (hereinafter "Doe ##1-20"), whose names are unknown to plaintiff, were and are citizens of the State of New York.

33. That at all times herein mentioned, Doe ##1-20 were and are employed as DOCCS correction officers.

34. That at all times herein mentioned, Doe ##1-20 were acting under color of state law.

35. That at all times herein mentioned, Doe ##1-20 were acting within the course and scope of their employment as DOCCS corrections officer.

36. That this Court has jurisdiction over this action in that it is brought pursuant to 28 U.S.C. § 1331 and § 1343.

## **FACTS**

37. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

38. That prior to December 20, 2017, plaintiff had authored and filed a grievance against correction officers at Elmira and had made other complaints against correction officers at Elmira concerning their treatment of him while he was an inmate at Elmira.

39. That the aforementioned grievance and complaints by plaintiff constituted a legitimate exercise of plaintiff's First Amendment right of free speech and right to petition the government for redress of grievances.

40. That prior to December 20, 2017, plaintiff was a patient/inmate in the Department of Corrections' Office of Mental Health Program and was assigned a Level 1.S designation, indicating the most severe level of mental illness.

41. That on December 20, 2017, Sergeant Mallare was tasked with interviewing plaintiff about grievances that plaintiff had submitted concerning staff misconduct.

42. That before the interview commenced, Mallare sent Officers Frunzi and May to pat frisk plaintiff.

43. That Frunzi and May, without any legal justification and not in furtherance of any legitimate penological interest, brutally assaulted and battered and otherwise used excessive force against plaintiff.

44. That the excessive physical force and assault and battery included, but was not limited to, closed fist punches to plaintiff's ribs and face and banging plaintiff's head against a metal desk.

45. That Frunzi, May, Mallare, Warders, Snyder, O'Rourke, and Doe ##1-20 each observed the excessive force being used by his or her fellow officers, and each had reasonable opportunity to intervene to prevent or stop that use of force.

46. That Frunzi, May, Mallare, Snyder, O'Rourke, and Doe ##1-20 deliberately failed and refused to intervene to prevent or stop the excessive force being used by his or her fellow officers.

47. That as a result of the aforesaid actions by Frunzi, May, Mallare, Snyder, O'Rourke, and Doe ##1-20, plaintiff sustained severe personal injuries, including, but not limited to, swelling to the head and a fracture to the left lateral ninth rib.

48. That Nurse Pottinger deliberately failed to document plaintiff's injuries during the medical examination that followed the use of force incident.

49. That as a result of the actions of Nurse Pottinger, plaintiff sustained additional personal injuries and/or an exacerbation of the injuries he had already sustained.

50. That after a period of six days, plaintiff finally was escorted to the medical clinic, where he was diagnosed with a fracture to the left lateral ninth rib.

51. That following the use of force incident detailed herein, Frunzi, May, Mallare, Snyder, and O'Rourke charged plaintiff with violating the Standards of Inmate Behavior Rules 100.11 (assault on staff) and 106.10 (direct order), 113.10 (weapon), 114.10 (smuggling), 102.10 (threats), violations of which plaintiff was innocent and of which the defendants knew plaintiff to be innocent.

52. That the misbehavior reports charged to plaintiff were combined and adjudicated in one Tier III Superintendent's Hearing, which commenced on January 2, 2018 before Captain Carroll at Elmira Correctional Facility.

53. That plaintiff pled not guilty to the charges.

54. That plaintiff testified that he did not assault or attempt to assault staff, and that, rather, he was the victim of an assault initiated by the officers in retaliation for his written complaints of verbal and physical abuse from staff.

55. That plaintiff requested several pieces of documentary evidence to support his defense, including, but not limited to, the grievances that were the basis for his interview with Mallare, the use of force report written by the officers, the medical examination portion of the use of force report, the use of force photographs, plaintiff's medical records, and information related to the investigation of his complaints of mistreatment conducted by the Office of Special Investigations.

56. That Carroll refused to produce any of the requested documents.

57. That Carroll stated that he had copies of plaintiff's grievances but did not include said grievances in the hearing records or list them among the evidence he considered in reaching his disposition.

58. That plaintiff requested that Carroll produce the use of force photographs and the records of the treatment he received following Nurse Pottinger's faulty use of force exam in order to demonstrate the severity of his actual injuries.

59. That Carroll stated that it was not his job to compare the use of force photographs to the use of force medical examination report and that plaintiff's medical records were not relevant to the hearing, and refused to produce the portion of the use of

force report documenting plaintiff's injuries, the use of force photographs, and plaintiff's medical records documenting his treatment following the use of force.

60. That plaintiff requested that Carroll call several inmate witnesses to testify at the hearing.

61. That Carroll did not call the requested witnesses and did not document either plaintiff's request for these witnesses or the reason for denying the request on the Hearing Record Sheet.

62. That plaintiff requested that Lt. Abby or another employee from the Office of Special Investigations ("OSI"), which was investigating and interviewing plaintiff in response to his reports of staff harassment and assault, be called as a witness to testify.

63. That Carroll did not call any witness from OSI and did not document either plaintiff's request for these witnesses or the reason for denying the request on the Hearing Record Sheet.

64. That plaintiff requested that Nurse Pottinger and the member of the medical staff who x-rayed his ribs be called as a witness to testify about the injuries he sustained from the assault by staff.

65. That Carroll deemed the testimony of both individuals irrelevant and denied plaintiff's request to call them.

66. That Carroll determined that this witness's testimony was irrelevant and denied plaintiff's request that medical staff testify.

67. That plaintiff asked Carroll to ask Mallare questions relating to his location when the alleged assault on staff began, where he was located when he heard the commotion

caused by the incident, whether plaintiff had sustained any injuries, and whether anyone else had sustained any injuries.

68. That Carroll refused to ask Mallare these questions and did not allow him to answer.

69. That plaintiff asked Carroll to ask May where Mallare was located during the incident, to provide details about of the alleged attempted assault, to provide details about the use of force, and whether May filed any report other than the misbehavior report.

70. That Carroll refused to ask May these questions and did not allow him to answer.

71. That plaintiff asked Carroll to ask Frunzi details about the alleged struggle, whether plaintiff was standing up or on the floor when he was placed in restraints, whether he struck anyone during the struggle, whether the force used could have injured him, and whether he sustained any injuries.

72. That Carroll refused to ask Frunzi these questions and did not allow him to answer.

73. That Carroll provided his own narration of events instead of allowing the witnesses to answer plaintiff's proposed questions, often in contravention of the evidence presented at the hearing.

74. That Carroll dismissed May before plaintiff finished asking his questions.

75. That Carroll did not consider plaintiff's testimony, including plaintiff's testimony that Mallare observed the beating and told him, "this is what happens when an inmate ... sends a complaint up front threatening an officer."

76. That Carroll deemed plaintiff's injuries irrelevant and did not allow the admission of documentary or testimonial evidence that could support the defense that plaintiff was the victim of an assault by officers and did not engage in the charged conduct.

77. That Carroll prevented plaintiff from introducing documents relevant to his defense, calling witnesses whose testimony would have been material, and asking questions to support his defense.

78. That Carroll failed to include plaintiff's grievances in the hearing record and did not consider plaintiff's defense that the misbehavior reports were false and written in retaliation for plaintiff's grievances.

79. That Carroll refused to produce the use of force report, the medical examination portion of use of force report, the use of force photographs, plaintiff's medical records, or information related to the OSI investigation, which plaintiff argued would have supported his defense.

80. That Carroll did not consider plaintiff's statements relating to his defense or his prior written complaints of abuse.

81. That on February 13, 2018, Carroll found plaintiff guilty of all charges and sentenced him to 365 days in SHU, with a corresponding loss of packages, commissary, and telephone privileges.

82. That plaintiff filed a timely appeal.

83. That on April 17, 2018, the Office of Inmate Discipline modified and reduced the penalties prescribed but otherwise affirmed Carroll's decision.

84. That plaintiff was held in the Special Housing Unit at Elmira Correctional Facility as a result of the conduct and determination of defendants.

85. That during the more than sixth months he was confined in SHU, plaintiff suffered an atypical and significant hardship in relation to the ordinary incidents of prison life.

86. That plaintiff was confined to cold cells, lost personal property, including legal papers; was deprived of proper food, opportunities for contact with his family, recreation, participation in programs, telephone and mail privileges, access to the law library, and other activities provided to and enjoyed by inmates in general population; and received inadequate medical care, all resulting in physical symptoms and illness and severe emotional stress and depression.

87. That the actions of defendants herein were intentional, sadistic, and malicious, and served no legitimate penological interest.

88. That the actions of defendants herein were motivated by an attempt to retaliate against plaintiff for having filed a grievance and having made complaints against Elmira correction officers, and for having legitimately exercised his First Amendment right of free speech and right to petition the government for redress of grievances.

89. That the actions of defendants herein shocked the conscience, and were so outrageous as to be outside the norms of any conduct that would be tolerated in civil society.

90. That the actions of defendants herein were intended to cause plaintiff severe emotional distress or, at minimum, were undertaken with reckless disregard of and deliberate indifference to the risk of causing extreme emotional distress.

91. That as a result of the foregoing, plaintiff sustained severe physical, emotional, and psychological injuries, and extreme emotional distress, endured and will continue to endure physical disabilities, pain and suffering, and loss of enjoyment of life,

incurred and will continue to incur healthcare expenses, incurred and will continue to incur lost earnings and loss of earning potential, and incurred and will continue to incur other economic loss.

## FIRST CAUSE OF ACTION
(Violation of Eighth Amendment: 42 U.S.C. § 1983)

92. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

93. That the aforesaid actions of defendants in intentionally, maliciously, and sadistically assaulting and battering and using excessive force against plaintiff, in verbally harassing and ridiculing plaintiff, in deliberately denying plaintiff prompt medical care and treatment and/or in being deliberately indifferent to plaintiff's need for prompt medical care and treatment, and in failing and refusing to intervene to prevent or stop the illegal and unconstitutional conduct of their fellow officers, constituted cruel and unusual punishment of plaintiff in violation of plaintiff's rights under the Eighth Amendment to the U.S Constitution, and entitle plaintiff to recover damages pursuant to 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION
(Violation of Fourteenth Amendment: 42 U.S.C. § 1983)

94. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

95. That the aforesaid actions of defendants in intentionally and maliciously depriving plaintiff of a fair and impartial disciplinary hearing and subjecting plaintiff to confinement which imposed an atypical and significant hardship on plaintiff in relation to the ordinary incidents of prison life constituted a violation of the substantive and procedural due

process rights guaranteed to plaintiff under the Fourteenth Amendment to the U.S. Constitution, and entitle plaintiff to recover damages pursuant to 42 U.S.C. § 1983.

### THIRD CAUSE OF ACTION
(Violation of First Amendment: 42 U.S.C. § 1983)

96. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

97. That the aforesaid actions of defendants constituted a violation of the rights guaranteed to plaintiff under the First Amendment to the U.S. Constitution to free speech and to petition the government for redress of grievances, and entitle plaintiff to recover damages pursuant to 42 U.S.C. § 1983.

WHEREFORE, plaintiff demands compensatory damages against all defendants in the amount of TWO MILLION ($2,000,000.00) DOLLARS, together with punitive damages, together with attorneys' fees pursuant to 42 U.S.C. § 1988, and together with the costs and disbursements of this action.

Dated: New York, New York
      October 20, 2020

> Yours, etc.
> SIVIN, MILLER & ROCHE, LLP
>
> s/ Edward Sivin
> Attorneys for plaintiff
> 20 Vesey Street, Suite 1400
> New York, NY 10007
> Telephone: (212) 349-0300
> Fax: (212) 406-9462
> Email: esivin@sivinandmiller.com